UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Joy Mack, #315439, | ) | C/A No. 5:14-4125-RBH-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Joseph McFadden, Warden, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

      Joy Mack ("Petitioner"), a state prisoner, filed this pro se Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 20, 21.

      On February 9, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment procedures and the possible consequences if he failed to respond adequately to Respondent's Motion. ECF No. 22. On March 16, 2015, Petitioner filed a Motion to Amend the Petition. ECF No. 28; *See Houston v. Lack*, 487 U.S. 266, 271 (1988) (pro se prisoner's pleading is deemed "filed" at moment of delivery to prison authorities for forwarding to district court). The Motion was granted on April 28, 2015, the Amendment was docketed, ECF No. 1-2, and Respondent was directed to file any amended Motion for Summary Judgment and Return and Memorandum that was deemed necessary to respond to Petitioner's amendment to the Petition. ECF No. 34.[1] Respondent submitted a

---

[1] Petitioner also filed a Motion for an Evidentiary Hearing. ECF No. 31. He also argues for a hearing in his Response to the Motion for Summary Judgment, contending that the factual basis for his Ground One is not fully developed in the record because the Post-Conviction Relief ("PCR") court refused to admit an expert affidavit at his hearing. ECF No. 30 at 10-12. As the undersigned notes herein, *see infra* note 4, the record in this case contains a sufficient factual

Supplemental Return and Memorandum in response to the Amendment on May 13, 2015. ECF No. 37. Petitioner filed a Response to the Supplemental Return and Memorandum on May 27, 2015. ECF No. 40. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, as supplemented, be granted.

I.      Factual and Procedural Background

Petitioner was indicted by a Charleston County Grand Jury in June 2008 for armed robbery, assault and battery with intent to kill ("ABWIK"), and kidnapping. App. 723-31.[2] On February 23-26, 2009, a jury trial was conducted on the pending charges in Charleston, South Carolina before the Honorable J. C. Nicholson. Petitioner was tried along with a co-defendant. App. 24-126. Attorney Alex Apostolou ("Trial Counsel") represented Petitioner, Attorney James Smiley represented the co-defendant, and Assistant Solicitors Trip Lawton and Kevin Hales represented the State. App. 1. Petitioner was convicted on all three charges. App. 544-45, 561-62. Petitioner was given concurrent sentences of twenty years on the ABWIK conviction, twenty-two years on the kidnapping conviction, and twenty-two years on the armed robbery conviction. App. 561-62.

Trial Counsel timely filed and served the notice of appeal, ECF No. 21-5, and Petitioner, represented by Attorney Elizabeth A. Franklin-Best of the South Carolina Commission on Indigent Defense, Division of Appellate Defense ("Appellate Counsel"), filed a final brief, raising the following issues on direct appeal (quoted verbatim):

I.      Was the evidence presented at trial insufficient to convict Mack where the victim identified Mack over a week after the crime, after having told the

---

basis for this court to review Petitioner's Ground One. Accordingly, Petitioner's Motion for Evidentiary Hearing is denied. *See Schriro v. Landrigan*, 550 U.S. 465, 475-75 (2007).

[2] Citations to "App." refer to the appendix of the record that was before the PCR court. It is on the docket of this case at ECF Nos. 21-1, 21-2, 21-3, and 21-4.

> officers on the night of the crime that he would not be able to identify any of the perpetrators, and having observed Mack earlier, and prior, to informing the police that he was one of the 5 robbers who burglarized his place of business and assaulted him?
>
> II.    Alternatively, did the judge err in allowing the victim to make an identification of Mack during the trial because the identification was unreliable under *Neil v. Biggers* [409 U.S. 188 (1972)]?

App. 567. The State of South Carolina was represented in the appeal by Assistant Attorney General Harold M. Coombs, Jr. App. 579. On May 17, 2011, the South Carolina Court of Appeals issued an unpublished opinion affirming Petitioner's conviction. App. 591-92; *State v. Mack*, Op. No. 2011-UP-215, 2011 WL 11734326 (S.C. Ct. App. May 17, 2011). The remittitur was issued on June 2, 2011. App. 594. Petitioner did not seek discretionary review to the South Carolina Supreme Court.

Petitioner filed a PCR application on July 5, 2011. App. 595-601. In his application Petitioner raised the following grounds for relief:

> (a)    Ineffective Assistance of Counsel
>
> (b)    Denial of 6th and 14th Amendment
>
> (c)    Denial of Due Process

Petitioner set out the "facts which support each of [his] grounds . . ." as:

> (a)    Counsel fail to subpoena witness's [sic]
>
> (b)    Counsel fail to file Notice of alibi
>
> (c)    Only present after the fact.

App. 597. The State, through Assistant Attorney General Matthew J. Friedman, made its return to the PCR application on September 27, 2011. App. 602-06. Petitioner, through PCR Counsel Jonathan L. Yates, Jason Smith, and James K. Falk, filed a pretrial brief in support of his PCR

application. App. 607-37. Petitioner's PCR counsel expanded on the brief statements in the application about the Petitioner's grounds for relief by stating:

> First, trial counsel failed to join co-defendant's motion to impeach the sole eyewitness on pending felony charges for selling counterfeit merchandise, and thus did not preserve that reversible issue for appeal . . . .
> . . . .
> Second, particularly because this whole case hinged on one eyewitness, trial counsel should have engaged an expert in the field of eyewitness identification in order to (a) prepare an effective line of questioning to cross examine Mr. Ayazgok, and (b) provide authoritative testimony for the jury explaining the scientifically accepted deficiencies and resulting unreliability of Mr. Ayazgok's identification.

App. 608. PCR Counsel attached the affidavit of Jennifer L. Beaudry, PhD. ("the affidavit"), and asked that the court consider the affidavit as Exhibit 1 in lieu of live testimony from the affiant. App. 609, 612-37. On May 22, 2012, an evidentiary hearing was conducted on the PCR application in Charleston, South Carolina before the Honorable Kristi Harrington. Petitioner was represented by James K. Falk ("PCR Counsel") at the hearing and the State was represented by Assistant Attorney General Karen Ratigan. App. 638. Petitioner's trial counsel was the only witness at the hearing. App. 639-52, 656-75. The PCR court refused to admit the affidavit into evidence at the hearing. App. 655.

On January 7, 2012, the PCR court signed an order denying Petitioner relief and making the following findings of facts and conclusions of law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

> This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the PCR hearing. This Court has further had the opportunity to observe the witness who testified at the hearing, and to closely pass upon their credibility. The Court has weighed the testimony accordingly.

> Set forth below are the relevant findings of fact and conclusions of law as required by S.C. Code Ann. § 17-27-80 (2003).

4

**<u>Ineffective Assistance of Counsel</u>**

The Applicant alleges he received ineffective assistance of counsel. In a PCR action, "[t]he burden of proof is on the applicant to prove his allegations to a preponderance of the evidence." <u>Frasier v. State</u>, 351 S.C. 385, 389, 570·S.E.2d 172, 174 (2002).

For an applicant to be granted PCR as a result of ineffective assistance of counsel, he must show both: (1) that his counsel failed to render reasonably effective assistance under prevailing professional norms, and (2) that he was prejudiced by his counsel's ineffective performance. <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 104·S. Ct. 2052 (1984); <u>Porter v. State</u>, 368 S.C. 378, 383, 629 S.E.2d 353, 356 (2006). In order to prove prejudice, an applicant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Cherry v. State</u>, 300 S.C. 115, 117-18, 386 S.E.2d 624, 625 (1989). "A reasonable probability is a probability sufficient to undermine confidence in the outcome of trial." <u>Johnson v. State</u>, 325 S.C. 182, 186, 480 S.E.2d 733, 735 (1997) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052).

Trial counsel testified he filed discovery motions and reviewed those materials with the Applicant. Trial counsel testified the only evidence against the Applicant was the identification by the victim sixteen (16) days after the robbery. Trial counsel testified his trial strategy was to highlight the lack of corroborating evidence against the Applicant, "poke holes" in the victim's identification, and impeach the victim's credibility. Trial counsel testified there was reason to question the victim because there were improbabilities and inconsistencies in his testimony. Trial counsel admitted he did not join co-defendant's motion to impeach the victim with his pending criminal charges. Trial counsel stated that, while the trial judge denied that motion, he believed he should have made the argument. Trial counsel stated he considered consulting an expert witness on eyewitness identifications but did not recall why he did not do so. Trial counsel stated he was familiar with the following concepts but failed to either argue or point them out at trial: cross-racial bias, a short period of time affects the ability to identify someone, and weapons-focus effect.

Initially, this Court notes trial counsel is an experienced attorney with many years of practice in the area of criminal defense. This Court finds trial counsel adequately conferred with the Applicant, conducted a proper investigation, and was thoroughly competent in his representation both before and during the trial of this case.

This Court finds the Applicant failed to meet his burden of proving trial counsel was ineffective for failing to join co-defendant's motion to impeach the victim with his pending criminal charges. Prior to opening arguments, co-defendant's counsel argued that he should be able to question the victim about his pending criminal charges because it went to the victim's credibility and bias.

(Trial transcript, pp.152-54). The trial judge ruled he would not allow such questions. (Trial transcript, p.154). It is undisputed that trial counsel did not join in the argument to impeach the victim with his pending criminal charges. This Court notes the purpose of this line of questioning was to impeach the victim's credibility. This Court finds, however, that trial counsel adequately impeached the victim's credibility without referring to his pending charges. Trial counsel subjected the victim to a thorough cross-examination in which he impeached the victim's description of his primary assailant (ostensibly the Applicant) with the description given in both his statement to police and in the *Neil v. Biggers* [409 U.S. 188, 93 S. Ct. 375 (1972)] hearing the prior day. Trial counsel also questioned the victim about whether his identification of the Applicant was influenced by noticing the Applicant's photograph in the newspaper and having seen the Applicant several times since the robbery. Trial counsel also questioned the victim about how he was able to identify the Applicant when he told police immediately after the robbery that he could not identify his assailants. (Trial transcript, pp.209-57). Accordingly, this Court finds the Applicant failed to demonstrate how his case was prejudiced because of trial counsel's decision not to argue in favor of impeaching the victim with pending criminal charges. See Cherry v. State, 300 S.C. at 117-18, 386 S.E.2d at 625.

This Court finds the Applicant failed to meet his burden of proving trial counsel was ineffective in failing to both consult and subpoena an expert in eyewitness identification. While counsel for the Applicant argued trial counsel erred in not consulting and subpoenaing an expert witness for trial, such an expert did not testify at the PCR hearing. Though an affidavit from a purported expert was admitted as a Court's Exhibit, this Court cannot speculate upon what difference this testimony would have made at the Applicant's trial because she did not testify at the PCR hearing. See Dempsey v. State, 363 S.C. 365, 370, 610 S.E.2d 812, 815 (2005) (finding that, as the applicant failed to have an expert testify at the evidentiary hearing, "any finding of prejudice is merely speculative"). Regardless, this Court finds the outcome of the Applicant's trial would not have been different if an expert had been consulted about how studies in the field of eyewitness identification could shape potential lines of questioning for the victim. Trial counsel testified he was familiar with the concept of a cross-racial bias in witness identification, and he admitted the fact that the victim (who was Caucasian) was married to an African-American impacted his decision not to explore this line of questioning (as the Applicant was also African-American). Trial counsel also testified he was familiar with the concepts that a short time period and a weapons-focus could affect an identification. This Court finds trial counsel thoroughly cross-examined the Applicant [sic][3] on these points. Therefore, trial counsel's decision not to consult an expert in eyewitness identification did not affect the outcome of the trial. See Cherry v. State, 300 S.C. at 117-18, 386 S.E.2d at 625. Further, this Court finds the outcome of the

---

[3] It appears that the PCR judge inadvertently wrote "Applicant," but likely intended to write "victim" here. Trial counsel did not cross-examine his own client, but he did extensively cross examine the victim of the charged crimes.

Applicant's trial would not have been different if an expert had testified at trial about the issue of eyewitness identification. As discussed <u>supra</u>, trial counsel thoroughly cross-examined the victim about both the circumstances of the crime and the identification of the Applicant several days later. Trial counsel also cross-examined the law enforcement officers associated with the case about: (1) the time line of the identification -- from the June 14th incident through the June 29th and June 30th identifications of the Applicant, (2) the lack of any evidence linking the Applicant to the crime, (3) the initial tip in this matter not mentioning the Applicant, and (4) discrepancies between testimony and written reports. (Trial transcript, pp.267-68; pp.308-10; pp.341-47; pp.377-88; p.411; pp.417-25). This Court finds trial counsel did an excellent job of both impeaching the victim's identification and credibility and highlighting the lack of physical evidence against the Applicant. As such, this Court finds there is no reasonable probability that the addition of an·expert in eyewitness identification to the defense case would have changed the outcome of the trial. <u>See</u> <u>Cherry v. State</u>, 300 S.C. at 117-18, 386 S.E.2d at 625; <u>Johnson v. State</u>, 325 S.C. at 186, 480 S.E.2d at 735.

Accordingly, this Court finds the Applicant has failed to prove the first prong of the <u>Strickland</u> test -- that trial counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that trial counsel committed either errors or omissions in his representation of the Applicant. This Court also finds the Applicant has failed to prove the second prong of <u>Strickland</u> – that he was prejudiced by trial counsel's performance. This Court concludes the Applicant has not met his burden of proving counsel failed to render reasonably effective assistance. <u>See</u> <u>Frasier v. State</u>, 351 S.C. at 389, 570 S.E.2d at 174.

### **All Other Allegations**

As to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this Order, this Court finds the Applicant failed to present any evidence regarding such allegations. Accordingly, this Court finds the Applicant waived such allegations and failed to meet his burden of proof regarding them. Therefore, they are hereby denied and dismissed.

### **CONCLUSION**

Based on all the foregoing, this Court finds and concludes the Applicant has not established any constitutional violations or deprivations before or during his trial and sentencing proceedings, Counsel was not deficient and the Applicant was not prejudiced by counsel's representation. Therefore, this PCR application must be denied and dismissed with prejudice.

App. 682-86 (internal footnote omitted).

Jonathan L. Yates, a member of Petitioner's PCR counsel's law firm, filed a Notice of Appeal on July 5, 2012. ECF No. 21-6. On June 8, 2013, Attorney Benjamin John Tripp, an Appellate Defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense, filed a Petition for Writ of Certiorari on Petitioner's behalf, raising the following issue:

> Did the PCR court err in improperly denying Petitioner's claim for ineffective assistance of trial counsel where the only evidence against Petitioner at his criminal trial was a single eyewitness's testimony; where trial counsel's sole strategy was to impeach this identification testimony; where trial counsel did not engage an expert in the field of eyewitness testimony to consult or testify to how easily the eyewitness could mistakenly identify Petitioner; and where the PCR court intentionally ignored the evidence of what such an expert's testimony would have been at the criminal trial?

ECF No. 21-7 at 3. The State, through Assistant Attorney General Ashleigh R. Wilson, filed a response to the Petition for Writ of Certiorari on November 14, 2013. ECF No. 21-8. On September 11, 2014, the South Carolina Supreme Court denied the Petition without any discussion of the issue raised therein. ECF No. 21-9; *Mack v. State*, No. 2012-212481 (S.C. Sept. 11, 2014). The remittitur was issued on September 29, 2014. ECF No. 21-10. This federal habeas petition followed on October 17, 2014. ECF No. 1-1; *see Houston v. Lack*, 487 U.S. at 271 (pro se prisoner's pleading is deemed "filed" at moment of delivery to prison authorities for forwarding to district court).

II.   Discussion

A.      Federal Habeas Issues

Petitioner raises the following issues in his federal Petition for Writ of Habeas Corpus, as amended, quoted verbatim:

> **GROUND ONE:** Sixth Amendment violation – Ineffective Assistant [sic] of counsel
>          . . . .

(1) Trial Counsel was ineffective in failing to consult an expert in the field of eyewitness identification testimony in order to prepare his cross-examination of the prosecuting witness; and (2) Trial Counsel was ineffective in failing to call an expert in the field of eyewitness identification testimony in order to challenge the reliability of the identification of Petitioner.

Pet. 5, ECF No. 1.

**Ground Two**: Ineffective Assistance of Counsel

**Supporting Facts**: Trial Counsel was ineffective for failing to join co-defendant's motion to impeach the victim regarding pending criminal charges and thereby failed to preserve that issue for appeal.
. . . .

**Ground Three:** Ineffective Assistance of Counsel

**Supporting Facts**: Trial Counsel was ineffective for failing to suppress and/or object to an in-court identification of Petitioner because the identification was unreliable under Neil v. Biggers.
. . . .

**Ground Four:** Due Process Violation

**Supporting Facts**: Petitioner's Due Process rights were violated when the victim made an in-court identification of him that was unreliable under Neil v. Biggers.

ECF No. 1-2 at 1-2.

B.      Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including

those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

C.     Habeas Corpus Standard of Review

1.     Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court

proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410.

a.     Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). More recently, the Supreme Court provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. In *Harrington*, the Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id.*; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the

Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. 362, 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which  is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to a state court's factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2) only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

b.     Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. *See Douglas v. California*, 372 U.S. 353, 357 (1963) (initial appeal); *Gideon v. Wainwright*, 372 U.S. 335, 344-45 (1963) (trial). In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court announced a two-part test for adjudicating claims of ineffective assistance of counsel. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id*. at 687. Second, the petitioner must show that this deficiency prejudiced

the defense. *Id.* at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting that the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotation marks omitted); *Pinholster*, 131 S. Ct. at 1403.

Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Pinholster*, 131 S. Ct. at 1398. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 1399. In the *Pinholster* case, the district court conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id.* at 1397. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id.* The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts. 131 S. Ct. at 1398. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." 131 S. Ct. at 1399 (internal citation and quotation marks omitted).

When a petitioner raises an ineffective-assistance-of-counsel claim that was denied on the merits by a state court in a § 2254 habeas petition, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* (citing *Williams*, 529 U.S. at 410) (emphasis in

original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id*.

       2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id*. The separate, but related, theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas-corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

       a.    Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that –
>
>   (A) the applicant has exhausted the remedies available in the courts of the State; or
>
>   (B)(i) there is an absence of available State corrective process; or
>
>     (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
>   (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state-court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds by United States v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal or (2) by filing a PCR application. State law requires that all grounds be stated in the direct appeal or PCR application. SCACR 203; *see* S.C. Code Ann. §§ 17-27-10 through 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR application in South Carolina courts. A PCR application must be filed within one year of judgment, or, if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or to the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002)

(holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the United States Supreme Court explained,

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984). However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)). Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996). To overcome a respondent's contention of procedural bypass, it is a petitioner's burden to raise cause and prejudice or actual innocence. If not raised by the petitioner, the court need not consider the defaulted claim. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1362-63 (4th Cir. 1995).

c.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and

actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495-96; *see Martinez v. Ryan*, 132 S. Ct. 1309, 1316 (2012) ("A prisoner may obtain federal review by showing cause for the default and prejudice from a violation of federal law.") (quoting *Coleman*, 501 U.S. at 750). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Murray*, 477 U.S. at 495-96. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

3.    Claims of Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Petitioner bears the burden of proving an error and prejudice in his ineffective-assistance-of-counsel claim. *Id*.

D.    Analysis of the Petition

1.    Procedurally Barred Grounds

As an initial matter, Respondent maintains that Petitioner's second, third, and fourth Grounds are procedurally barred from habeas review. ECF No. 37 at 2, 5-6, 10. Respondent contends that Ground Two is procedurally defaulted because "it was not raised in Petitioner's PCR appeal . . . ." *Id*. at 2. As far as Ground Three is concerned, Respondent contends that it is procedurally barred because "it was not raised to and ruled upon by the PCR court." *Id*. at 5.

Regarding Ground 4, Respondent contends that it is procedurally defaulted because it "was not preserved at the trial level." *Id*. at 6. In Response, Petitioner argues that the substance of Ground Two was presented to both the PCR court and the South Carolina Supreme Court and, therefore, it is not procedurally barred. ECF No. 40 at 1-3. With regard to Ground Three, Petitioner contends that his PCR counsel was ineffective for failing to raise that issue in the PCR case and cites to the United States Supreme Court case of *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), asserting that its holding excuses any procedural default of this Ground. ECF No. 40 at 6-7. Petitioner also contends that his Ground Four is not procedurally defaulted because it was one of the points raised in his direct appeal and was fully exhausted through that proceeding. *Id*. at 8.

a.    Petitioner's Ground Two is Not Procedurally Barred

As previously noted, "a federal habeas court may consider only those issues which have been 'fairly presented' to the state courts." *Matthews v. Evatt*, 105 F.3d at 911. Although the claims presented in federal court and state court need not be "identical," *see Ramdass v. Angelone*, 187 F.3d 396, 409 (4th Cir. 1999), the petitioner must present the "'substance' of his federal habeas corpus claim" to the highest state court with authority to consider it. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971)). Presenting the "substance" of the claim requires that the claim '"be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.'" *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (quoting *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988)). "In other words, fair presentation contemplates that 'both the operative facts' and the 'controlling legal principles' must be presented to the state court." *Matthews*, 105 F.3d at 911 (quoting *Verdin v. O'Leary*, 972 F.2d 1467, 1474 (7th Cir. 1992)).

In the Petition for Writ of Certiorari filed on Petitioner's behalf seeking review of the PCR court's final order ("Petition for Cert."), the only "ISSUE PRESENTED" to the South Carolina Supreme Court was this:

> Did the PCR court err in improperly denying Petitioner's claim for ineffective assistance of trial counsel where the only evidence against Petitioner at his criminal trial was a single eyewitness's testimony; where trial counsel's sole strategy was to impeach this identification testimony; where trial counsel did not engage an expert in the field of eyewitness testimony to consult or testify to how easily the eyewitness could mistakenly identify Petitioner; and where the PCR court intentionally ignored the evidence of what such an expert's testimony would have been at the criminal trial?

ECF No. 21-7 at 3. Read literally, this issue appears to be limited to the "expert-witness issue" that is involved only in Petitioner's Ground One. However, Petitioner quotes a portion of the "ARGUMENT" section in his Petition for Cert. wherein PCR Appellate Counsel faulted the PCR court for finding that "trial counsel adequately cross-examined the store owner with the evidence at hand, and the inability to impeach with the pending charges therefore did not prejudice Petitioner." ECF No. 21-7 at 12. That portion of the argument also faulted the PCR court for "ignoring" trial counsel's purported admission of his own ineffectiveness relating to his failure to preserve the issue of the correctness of the trial court's exclusion of "impeachment testimony" regarding "the State office prosecuting the case at bar . . . simultaneously prosecuting a case against the witness." *Id.* at 12-13. In the "STATEMENT" portion of the Petition for Cert., the following facts relevant to Petitioner's Ground Two were presented to the court:

> Trial counsel's strategy was alluringly simple: highlight that the eyewitness testimony was the only evidence implicating Petitioner, "poke holes" in the identification, and impeach the credibility of the witness. App. 641, 11. 4-13. Distressingly, however, trial counsel was quickly disarmed of the evidence of the store owner's pending prosecution. In a pretrial colloquy, codefendant's counsel informed the court he intended to introduce the evidence as a prior bad act to impeach the store owner's character for truthfulness and bias. App. 153. "I'm not going to allow you to go into opinion charge. Okay? Period," the court responded. App. 154, 11. 8-9. More fatally, Petitioner's trial counsel, though committed in

principle to the position of codefendant's counsel, failed to actually speak up and
formally join the motion.

ECF No. 21-7 at 5. Trial Counsel's PCR testimony on this topic, including his statement that his
failure to join the co-defendant's motion regarding the "pending prosecution" evidence was a
"mistake," was also included in the STATEMENT section. *Id*. at 9. It was also specifically noted
at the conclusion of that section of the Petition for Cert. that "the PCR court issued an order
dismissing Petitioner's claim, ruling that Petitioner failed to prove his trial counsel was
ineffective for failing to join codefendant's motion to impeach the store owner by his pending
prosecution . . . , [and that] [t]he PCR court found that Trial Counsel adequately cross-examined
the store owner with the evidence at hand, and the inability to impeach with the pending charges
therefore did not prejudice Petitioner." *Id*. at 10-11. Thereafter, in the very first paragraph of the
"DISCUSSION" section of the "ARGUMENT" portion of the Petition for Cert., PCR Appellate
Counsel referenced the "Sixth Amendment of the United States Constitution," *Strickland v.
Washington*, and "ineffective assistance of counsel," and in the very next paragraph --  part of
which is quoted by and relied on by Petitioner to refute Respondent's assertion of procedural bar
in this case -- counsel argued that the PCR court's holding that "the inability to impeach with the
pending charges . . . did not prejudice Petitioner" was not supported by the record. *Id*. at 12. PCR
Appellate Counsel's argument in this regard specifically included references to Trial Counsel's
PCR testimony in which he testified that he then believed that he should have tried to offer such
impeachment testimony and an assertion that the PCR court "ignored" that testimony. *Id*. at 13.

The undersigned finds that the Petition for Cert. presented the South Carolina Supreme
Court with both the applicable facts and the legal basis for Petitioner's contention that the PCR
court erred in finding that trial counsel was not ineffective for failing to preserve the
impeachment-evidence issue at trial. Although PCR Appellate Counsel did not specifically

include the facts relating to this point in the "ISSUE PRESENTED" section and the major

portion of the "ARGUMENT" section in the Petition for Cert. is devoted to the "expert witness"

issue that is Petitioner's Ground One in this court, PCR Appellate Counsel did "fairly present"

Petitioner's Ground Two ineffective-assistance claim for the state Supreme Court's review.

Therefore, the undersigned agrees with Petitioner that this issue was fairly presented for state

Supreme Court review in the PCR appeal. *See Gordon v. Braxton*, 780 F.3d 196, 201 (4th Cir.

2015) (petitioner fairly presented his claim to the state court where the "operative facts" were

discussed and applicable legal opinions were cited indicating the "federal nature" of the claim);

*Boseman v. Bazzle*, 364 F. App'x 796, 803-04 (4th Cir. 2010) (rejecting a procedural-default

contention; claim fairly presented to court despite lack of "separate, specific allegation" of

ineffective assistance based on certain facts where that was a general "alibi" ground asserted and

the petitioner's alibi arguments included the relevant facts); *see also Fullwood v. Lee*, 290 F.3d

663, 676 n.4 (4th Cir. 2002) (claim not defaulted even though "the current emphasis of . . . claim

seems to be slightly different [in federal court] than it was in state court."). Accordingly, the

undersigned will address the merits of Petitioner's Ground Two below.

b.    Petitioner's Ground Three is Procedurally Barred

Respondent also contends that Petitioner's Ground Three -- asserting ineffective

assistance of counsel for failure to "suppress and/or object to" the victim's testimony at trial in

which he identified Petitioner as one of the persons who committed armed robbery in his store --

is "procedurally barred because it was not raised to and ruled upon by the PCR court." ECF No.

37 at 5. Petitioner does not dispute that this claim of ineffective assistance of trial counsel was

not raised before the PCR court; however, he cites to *Martinez v. Ryan*, 132 S. Ct. 1309 (2012),

and contends that the procedural bar should not be applied in this case. ECF No. 40 at 6.

Petitioner asserts that the procedural default on this point was caused by the ineffective

assistance of his PCR counsel and that the failure was prejudicial because the victim's "unreliable" testimony constituted the only evidence that connected Petitioner to the crimes of which he was convicted. ECF No. 40 at 6. In this regard, Petitioner lists eight separate reasons why he argues that the victim's testimony was unreliable. He asserts that, even though his trial counsel was successful in having a "photo line-up suppressed" at the pretrial *Neil v. Biggers* hearing, he should have also moved to suppress or otherwise objected to the victim's in-court identification testimony. *Id.* at 7-8.

In *Martinez*, the United States Supreme Court reviewed a case where an Arizona state prisoner petitioned for writ of habeas corpus. 132 S. Ct. at 1310. Arizona, like South Carolina, requires "claims of ineffective assistance at trial to be reserved for state collateral proceedings." *Id.* at 1314. Martinez's attorney in his state collateral proceeding filed a notice for PCR, however, she later filed a statement "asserting she could find no colorable claims at all." *Id.* Ultimately, Martinez's PCR action was dismissed. *Id.* Later, with the assistance of new PCR counsel, Martinez filed a second notice for PCR wherein he raised several ineffective-assistance-of-trial-counsel claims; however, the Arizona trial and appellate courts denied Martinez relief because he failed to raise his second PCR claims in the first PCR. *Id.* Martinez raised his ineffective-assistance-of-trial-counsel claims in a habeas corpus petition in federal district court, arguing that review of the claims should not be procedurally barred because his original PCR counsel was ineffective for failing to raise them in the first PCR action. *Id.* at 1314-15. The Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 1315. In its analysis, the *Martinez* Court held:

> [A]n attorney's errors during an appeal on direct review may provide cause to excuse a procedural default; for if the attorney appointed by the State to pursue the direct appeal is ineffective, the prisoner has been denied fair process and the

23

opportunity to comply with the State's procedures and obtain an adjudication on the merits of his claims.

*Id.* at 1317 (citing *Coleman v. Thompson*, 501 U.S. at 754; *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Douglas v. California*, 372 U.S. at 357-58). Thus, if a state requires a prisoner to raise a claim of ineffective assistance of trial counsel in a collateral proceeding, the *Martinez* Court determined that a prisoner may establish cause for a default of such claim in the following two circumstances:

> [1] where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial [and 2] where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.

132 U.S. at 1318. To overcome the default, *Martinez* requires the petitioner to demonstrate that the underlying ineffective assistance-of-counsel claim is substantial or has merit. *See id.* Under the holding in *Martinez*, even if Petitioner could successfully prove that his trial counsel acted unreasonably, he still must prove that counsel's unreasonable performance was prejudicial.

To the extent that Petitioner seeks to invoke *Martinez* to allege that his PCR Counsel was ineffective for failing to raise the issue of trial counsel's failure to object to the victim's identification testimony during trial, under the first requirement of the *Martinez* exception, Petitioner must "demonstrate that the underlying ineffective-assistance-of-trial counsel claim is a substantial one, which is to say that the [petitioner] must demonstrate that the claim has some merit." *Gray v. Pearson*, 526 F. App'x 331, 333 (4th Cir. 2013). Therefore, Petitioner must show that there is a reasonable probability that he would have received relief on his claim of ineffective assistance of trial counsel in his application for PCR if that claim had been raised, and that his PCR Counsel's failure to raise the claim during his PCR proceeding was objectively

24

unreasonable. *Ford v. McCall*, No. 8:12-2266-GRA, 2013 WL 4434389, at *11 (D.S.C. Aug. 14, 2013) (citing *Horonzy v. Smith*, No. 11-234, 2013 WL 3776372, at *6 (D. Idaho Sept. 12, 2012) ("The application of the *Strickland* test in this instance means that Petitioner is required to show that counsel's representation during the post-conviction proceeding was objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter. This standard is a high one."). Applying *Martinez* to the record and Petitioner's Ground Three, the undersigned finds that Petitioner has failed to show he is entitled to relief under this standard. Because Petitioner cannot demonstrate a substantial claim of ineffective assistance of trial counsel, he cannot demonstrate that PCR Counsel was objectively unreasonable in failing to raise it.

In this case, Petitioner offers no evidence that would support a finding that Trial Counsel was ineffective with regard to the victim's in-court identification testimony. Specifically, Petitioner fails to demonstrate a reasonable probability that the outcome of his trial would have been different had Trial Counsel made a lack-of-reliability objection to the victim's testimony during trial. Trial Counsel raised the issue of the reliability of the victim's identification of Petitioner as the perpetrator with the trial court by pretrial motion. App. 91. Trial Counsel vigorously participated in the pretrial hearing on that subject, raising most, if not all, of the facts about the victim's identification of Petitioner as his assailant that Petitioner now points to as evidence of "unreliability" during cross examination of the victim and two investigating law-enforcement officers, and strenuously arguing unreliability to the trial judge. App. 103-19, 123-27, 140-44, 145-46, 147-48. In response, the State argued other facts surrounding the victim's identification that it contended provided sufficient indicia of reliability. App. 146-47. The trial court closely questioned the State's counsel about the facts presented in support of the reliability

argument, and, while it is true that Petitioner's trial counsel did not specifically ask the trial court to exclude all identification testimony from the victim but, instead, focused most of his argument on exclusion of evidence of a photo lineup that was presented to the victim, both the State and the trial judge also discussed and considered the issue of reliability of the victim's testimony. App. 150-51. The trial judge clearly considered all the facts presented about the circumstances that led the victim to identify Petitioner and granted Petitioner's motion to suppress the photo lineup, but also stated, "that is all I'm suppressing. No in court identification or any of the other identifications . . . ." App. 151. This decision by the trial court was neither tentative nor ambiguous and it obviously indicated the court's firm conviction that the victim's testimony about his identification of Petitioner was sufficiently reliable to go before a jury. As a result, there is no reasonable probability that further objection to the victim's identification testimony during the trial would have been successful or would have made any difference in the outcome of Petitioner's trial.

Moreover, as the PCR court pointed out, Trial Counsel conducted a strong cross examination of the victim and the State's law-enforcement witness, questioning them closely about the facts that Petitioner contends show unreliability. App. 209-57, 416-23. In doing so, Trial Counsel provided the jury with the virtually the same evidence of unreliability now urged by Petitioner and upon which the jury could have reasonably discounted the victim's identification testimony had it chosen to do so. Trial Counsel also strenuously urged in his closing argument that the victim's identification was unreliable and clearly asked the jury to reject it. App. 511-21. Accordingly, the undersigned finds that Petitioner cannot show sufficient prejudice from Trial Counsel's failure to object to or move to suppress the victim's in-court identification testimony. Thus, Petitioner's claim that Trial Counsel was ineffective in his approach to the victim's testimony is without merit.

Furthermore, a federal court may not grant habeas relief unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d). Plaintiff has not provided this court with any Supreme Court precedent to establish that his trial counsel's representation was constitutionally deficient for failing to object to the victim's identification testimony during the trial. *See, e.g.*, *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977) (Generally, identification "evidence is for the jury to weigh . . . for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature."); *Neil v. Biggers*, 409 U.S. at 199 (1972) (admission of an eyewitness' identification testimony does not violate a criminal defendant' due-process rights if a trial court properly considers "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation").

Also, Petitioner cannot demonstrate that, but for PCR counsel's errors, there is a reasonable probability that he would have been awarded relief on his claim of ineffective assistance of trial counsel. Moreover, Petitioner has failed to demonstrate that this alleged deficiency prejudiced the defense or would have changed the outcome of his criminal trial or appeal. As a result, Petitioner fails to establish cause under *Martinez,* which is initially required to excuse the procedural default of this claim. Accordingly, the undersigned finds that the issue raised in Petitioner's Ground Three is procedurally defaulted. *See Martinez*, 132 S. Ct. at 1320;

*Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996) (finding in order to show prejudice a Petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different).

c. Petitioner's Ground Four is Procedurally Barred

Respondent also contends that Petitioner's related Ground Four, a "free standing" due-process claim based on the trial court's admission of the victim's identification testimony, is procedurally defaulted because it was not preserved for error in the trial court. ECF No. 37 at 6. Petitioner responds that this point is not procedurally defaulted because it was raised and argued before the South Carolina Supreme Court in his direct appeal. ECF No. 40 at 8.

Petitioner is correct in his assertion that certain issues such as this free-standing due-process claim arising from the admission or exclusion of evidence at trial may be fully exhausted by raising it in a direct appeal and receiving a ruling on the merits of the claim. It is true that Petitioner's appellate counsel raised this issue as one of the points on his direct appeal and that it could have been fully exhausted if it had been considered on the merits by the appellate court. *See Castille v. Peoples*, 489 U.S. 346, 350 (1989); *Green v. Lindler*, 993 F.2d 1537(4th Cir. 1993). However, this exhaustion-of-state-court-remedies rule does not excuse the initial failure of Trial Counsel to preserve the issue for review by the appellate court, and the lack of a contemporaneous objection at trial precluded an appellate decision on the merits of the claim. *See Wainwright v. Sykes*, 433 U.S. at 87 (recognizing the failure to preserve an issue under state law results in procedural bar on federal habeas review); *Jenkins v. Bodison*, No. 4:09-cv-0267-GRA, 2010 WL 1073983 (D.S.C. Mar. 18, 2010) ("[A]n issue may not be raised for the first time on appeal; to preserve an issue for appeal, it must be raised to and ruled upon by the trial court, that is, the trial court must be given an opportunity to resolve the issue before it is presented to the appellate court.") (citations omitted); *see also Ylst v. Nunnemaker*, 501 U.S. 797, 803-05

(1991) (rejection of claim on state procedural grounds does not save a claim from procedural default); *Murray v. Carrier*, 477 U.S. at 485 (same). The South Carolina Court of Appeals' decision on Petitioner's direct appeal shows that the issue of the constitutionality of the admission of the victim's in-court identification testimony was not considered on the merits because it was "not preserved for appellate review." *State v. Mack*, Op. No. 2011-UP-215, 2011 WL 11734326, at *1 (S.C. Ct. App. May 17, 2011). Thus, under applicable United States Supreme Court authority cited previously, Petitioner's Ground Four is procedurally defaulted and this court can consider it only if Petitioner proves cause and prejudice for the default. *See Smith v. Murray*, 477 U.S. at 533.

Petitioner does not make a cause and prejudice argument with regard to this Ground. Instead, as noted above, he argues that it is not procedurally defaulted, which the cited cases show to be a mistaken contention. Nevertheless, as previously discussed regarding Petitioner's Ground Three, Petitioner cannot show that Trial Counsel was ineffective in his failure to object to the subject testimony. Furthermore, Petitioner does not make any argument that his counsel was prevented from imposing a contemporaneous objection to the testimony by an external factor that hindered compliance with the state procedural rule, nor does he make an assertion that the claim was particularly novel. Thus, Petitioner fails to show the required cause for his procedural default of his Ground Four. *See Murray*, 477 U.S. at 495-96. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d at 931; *see Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into federal court."). Accordingly, the undersigned agrees with Respondent that Petitioner's Ground Four is procedurally defaulted.

2.    Miscarriage of Justice Exception

Petitioner may overcome procedural defaults and have his claims addressed on the merits by showing either cause and prejudice for the default or that a miscarriage of justice would result from the lack of such review. *See Coleman*, 501 U.S. at 750; *Savino v. Murray*, 82 F.3d 593, 602-03 (4th Cir. 1996). In order to demonstrate a miscarriage of justice, Petitioner must show that he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.* (internal citation omitted). Petitioner does not argue that he is actually innocent of the charges on which he was convicted, and the undersigned's review of the record does not support a showing of any cause and prejudice or actual innocence to excuse the defaults of Petitioner's Grounds Three and Four.

In *Kornahrens*, the Fourth Circuit Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. 66 F.3d at 1362-63. The court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion that follows is dicta. *See Karsten v. Kaiser Found. Health Plan*, 36 F.3d 8, 11 (4th Cir. 1993). Therefore, once a court has determined that a claim is procedurally barred, it should not stray into other considerations. Accordingly, the undersigned will not discuss the merits of the claims raised in Petitioner's Grounds Three and Four as these claims are procedurally barred and recommends that Respondent's Motion for Summary Judgment be granted as to Grounds Three and Four.

2.      Merits

a.      Ground One: Ineffective Assistance of Counsel for Failing to Use the Services of an Expert in the Field of Eyewitness-identification Testimony

In his Ground One, Petitioner contends that his trial counsel was ineffective because he did not consult with an expert on eyewitness-identification testimony to prepare for cross examination of the victim of the crimes for which Petitioner stands convicted and did not take steps to place such an expert on the stand at trial to testify on Petitioner's behalf. ECF No. 30 at 6. Petitioner asserts that the PCR court unreasonably applied established federal law in finding otherwise because Trial Counsel did not testify that he failed to consult or call such an expert as part of his trial strategy, and because trial counsel did testify that he should have used such an expert at trial and that Petitioner was prejudiced by not having the expert testimony presented at his trial. Thus, Petitioner contends, the evidence before the PCR court showed a "reasonable probability" that the outcome of the trial would have been different had such an expert testified. *Id.* at 8-9. Respondent contends that the PCR court's determination that Trial Counsel was not ineffective and that consultation with or use of such an expert at trial would not have changed the outcome of the trial was reasonable and is entitled to deference by this court because it was based on the court's determination of the credibility of trial counsel as a witness before the court and the court's review and reasonable analysis of the record before it. ECF No. 21 at 15-16. Respondent also contends that the PCR court's decision on this issue was based on a reasonable application of established federal law which does not require trial counsel to investigate or use all possible methods for impeaching a witness or to introduce all possible favorable evidence at trial. *Id.* at 16-17.

With respect to the issue presented in Petitioner's Ground One, the record discloses that Petitioner was tried and convicted of armed robbery, ABWIK, and kidnapping in connection

with a robbery of a clothing store, Urban Gear, on June 14, 2007. The owner of the store ("the victim") testified at the trial and identified Petitioner as one of five black men who robbed his store. The victim testified that Petitioner robbed him by pulling out a gun, pointing it at his face, and then hitting him with the gun. App. 171-72. On cross-examination, Petitioner's trial counsel questioned the victim about the inconsistencies in his description of the suspect such as differing descriptions he gave of the suspect's clothing at different times and about his initial inability to identify any suspects shortly after the robbery. Trial Counsel also elicited testimony from the victim to the effect that the robbery was over in three to five minutes and that he did not have an extended period of time to view the person who had the gun. App. 210-13, 218, 237-38, 249-51. Trial Counsel also questioned the victim about the distance from which he viewed the man with the gun and about the fact that he saw Petitioner's photograph in the newspaper and then saved the photograph. App. 217, 254-55. During his closing arguments, Trial Counsel pointed out the short window of time in which the victim was able to view the suspects and told the jury that such identification testimony is often suspect. App. 505-06, 509. Trial Counsel also emphasized the lack of any other evidence that would corroborate the victim's identification of Petitioner as a perpetrator. App. 519.

At the PCR evidentiary hearing, Trial Counsel testified that the only evidence against Petitioner was the victim's identification and stated that his  strategy was to highlight the fact that there was no other evidence other than the eyewitness testimony and to "poke holes" in that identification. App. 639-41. Trial counsel did state that he had considered getting an expert witness in the area of eyewitness testimony, and that, although he did not do so, he "wish[ed he]'d gotten an expert witness." App. 650-51, 668-70. In response to questioning by Petitioner's PCR counsel, Trial Counsel explained his understanding of "cross-racial bias" (the subject

matter of the expert's affidavit that Petitioner submitted to the PCR court)[4] as "in a nutshell it is perhaps more difficult for one person of a race to identify other -- it would be easier for them to identify people of their own race, and it would be more difficult for them to make correct identifications in other races." App. 656. However, Trial Counsel confirmed his knowledge that while the victim was white and Petitioner was black, he also knew that the victim was married to a black woman. App. 657. When asked on cross examination about his reasons for not arguing cross-racial bias to the jury as a separate basis for unreliability of the identification testimony, Trial Counsel stated that "[t]he fact that he had that African American wife impacted my decision whether to go down that road." App. 670. The PCR court determined that Petitioner did not meet his "first prong" burden under *Strickland v. Washington* of proving that Trial Counsel was ineffective in failing to consult with or use at trial an expert on the issue of eyewitness identification because Trial Counsel effectively executed his strategy of discrediting the victim's identification testimony without the use of expert testimony. App. 683-84. The PCR court pointed to Trial Counsel's extensive cross examination of the victim as to various discrepancies in the descriptions of his assailant that he gave at different points, his lack of opportunity to closely observe the assailant, and his possible confusion on the identification

---

[4] Petitioner's PCR counsel attempted to have the affidavit of Jennifer L. Beaudry, Ph.D., entered as an exhibit during the evidentiary hearing. App. at 649-56. The State objected to the admission of the affidavit, arguing it was hearsay but agreeing that the PCR statute allowed the court to admit such evidence in its discretion. App. 654. The PCR court sustained the objection but allowed Petitioner's PCR counsel to proffer the affidavit as an exhibit for appeal purposes. App. 655-56. Although Petitioner appears to argue that the PCR court did not consider the contents of the affidavit because it refused to admit it into evidence, ECF No. 14, the contents of the affidavit were thoroughly discussed at the PCR hearing, App. 651-55, and the PCR court's final order includes considerable discussion of PCR counsel's attempted introduction of that document instead of live testimony and the court's conclusion that the affidavit would not have changed her view of the Trial Counsel's effectiveness. App. 684-85. Also, the full content of the affidavit is found in the record before this court as an exhibit to the PCR court's final order. App. 688-722.

because of subsequent unconnected sightings of Petitioner in his store and in a newspaper. The PCR court also noted Trial Counsel's strong jury argument on the topic of unreliability of the victim's identification testimony and the lack of other evidence of Petitioner's guilt.

The Fourth Circuit Court of Appeals has stated:

[T]the United States Supreme Court has increasingly cautioned . . . [that] review of state court decisions on federal constitutional claims is a highly constrained one. We are not at liberty to substitute our judgment for that of the state court on matters of federal constitutional law, even if we believe the state court decision was incorrect. "The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was *unreasonable* -- a substantially higher threshold."

*Fowler v. Joyner*, 753 F.3d 446, 457 (4th Cir. 2014) (emphasis added) (quoting from *Schriro v. Landrigan*, 550 U.S. at 473). The Court has also held that decisions concerning the calling of witnesses are matters of strategy left to the attorney, which ordinarily cannot constitute ineffective assistance. *Jones v. Barnes*, 463 U.S. 745, 808 (1983).

Under applicable federal law, a state court's factual findings are entitled to deference in this action. *See Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)) ("to overturn a state court's credibility judgments in a federal habeas action, the state court's error must be stark and clear"); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to re-determine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). Petitioner may overcome this presumption of correctness of the trial court's findings only by showing "'clear and convincing evidence to the contrary.'" *Wilson v. Ozmint*, 352 F.3d 847, 858-59 (4th Cir. 2003) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 240 (2003)).

Additionally, the Fourth Circuit has recognized that a court considering the effectiveness of counsel's performance at trial, "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Tucker v. Ozmint*, 350 F.3d

433, 439 (4th Cir. 2003) (quoting *Strickland v. Washington*, 466 U.S. at 690). Also, as previously noted, where a § 2254 petitioner raises an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at 101. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Id.* (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*; *see Deck v. State*, 381 S.W.3d 339, 356 (Mo. 2012) ("'In many instances seasoned trial counsel do not object to otherwise improper questions or arguments for strategic purposes. It is feared that frequent objections irritate the jury and highlight the statements complained of, resulting in more harm than good.'") (quoting *State v. Tokar*, 918 S.W.2d 753, 768 (Mo. 1996)). Further, insofar as trial strategy is concerned in an ineffective-assistance-of-counsel claim, the United States Supreme Court has stated, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting from *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The Court stated, "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." 466 U.S. at 690 (citing to Goodpaster, *The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases*, 58 N.Y.U.L. Rev. 299, 343 (1983)).

The Fourth Circuit has also indicated that deference will be given to trial counsel's reasonable or plausible strategic decisions, particularly where there is no clear showing of prejudice to the petitioner from such strategy. *See Lovitt v. True*, 403 F.3d 171, 181 (4th Cir. 2005) (refusing to misuse "power of hindsight" to second guess trial counsel's "plausible strategic judgments.") (quoting from *Bunch v. Thompson*, 949 F.2d 1354, 1364 (1991)); *Sexton v. French*, 163 F.3d 874, 887 (4th Cir. 1998) ("Obviously, this tactical decision made by . . . trial counsel cannot be second-guessed by this court . . . ."); *Fitzgerald v. Thompson*, 943 F.2d 463, 469 (4th Cir. 1991) ("[T]rial counsel made reasonable tactical decisions that should not now be second-guessed on collateral review."); *see also Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) ("Decisions about what types of evidence to introduce 'are ones of trial strategy, and attorneys have great latitude on where they can focus the jury's attention and what sort of mitigating evidence they can choose not to introduce.'") (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1571 n.9 (4th Cir. 1993)). In *Clemons v. United States*, 408 F.2d 1230 (D.C. Cir. 1968), the court stated:

> It is part of our adversary system that we accept at trial much evidence that has strong elements of untrustworthiness -- an obvious example being the testimony of witnesses with a bias. While identification testimony is significant evidence, such testimony is still only evidence, and, unlike the presence of counsel, is not a factor that goes to the very heart the 'integrity' of the adversary process. Counsel can both cross-examine the identification witnesses and argue in summation as to factors causing doubts as to the accuracy of the identification -- including reference to both any suggestibility in the identification procedure and any countervailing testimony such as alibi.

408 F.2d at 1251 (footnote omitted).

Having reviewed the parties' submissions and the complete record in this case, the undersigned finds that the PCR court was in the best position to determine the credibility of the witnesses who testified before it, and that it reasonably discredited Trial Counsel's self-deprecating testimony to the effect that he believed he should have used an expert in eyewitness

36

testimony to help him defend Petitioner and that his failure to do so prejudiced Petitioner. Viewing the record as a whole, including Trial Counsel's questions to witnesses and his argument at the *Neil v. Biggers* hearing and his cross examination of the victim and opening and closing arguments at trial, the undersigned finds that it was reasonable for the PCR court to give little weight to Trial Counsel's PCR testimony about his supposed shortcomings as defense counsel. As the PCR court noted, the record shows that Trial Counsel was effective in his trial strategy of "poking holes" in the victim's identification testimony when he vigorously cross examined the victim about the circumstances surrounding his less-than-definite pretrial identification of Petitioner as one of the five persons who allegedly robbed and assaulted him. Trial Counsel also argued earnestly to the jury that the victim's testimony was the result of mistaken identity and suggestive circumstances such as his seeing a picture of Petitioner in a newspaper and seeing Petitioner in his store subsequent to the robbery. Trial Counsel did not fail to investigate methods of impeachment; Trial Counsel merely chose which methods he believed to be most effective for trial. Petitioner's suggestion of better ways to impeach the victim with the use of expert testimony does not prove that Trial Counsel's actual methods fell below an objective standard of reasonableness. Moreover, the PCR court acted within its discretion in ruling that the expert affidavit submitted by Petitioner should not be admitted into evidence. *See* S.C. Code Ann. § 17-27-80; *McKnight v. State*, 661 S.E.2d 354, 365 (S.C. 2008); *Simpson v. Moore*, 627 S.E.2d 701, 712 (S.C. 2006).

Thus, giving the PCR court's factual findings and legal conclusions the appropriate deference, the undersigned finds that the decision that Trial Counsel was not ineffective in his challenges to the victim's testimony without consulting an expert or calling an expert to testify at trial was entirely reasonable and was not the result of an unreasonable application of existing federal law. *See Yaitsky v. United States*, No. 2:04-cv-1097-PMD, 2008 WL 3845446, at *17

(D.S.C. Aug. 18, 2008) ("The fact that other methods for impeachment existed does not mean that Petitioner received ineffective assistance of counsel."). Because the PCR court's determination that Petitioner did not show that his Trial Counsel was ineffective is reasonable both factually and legally, there is no need for this court to consider whether Petitioner suffered prejudice from the lack of expert testimony in his case. *See Strickland v. Washington*, 466 U.S. at 669 ("Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."). Nevertheless, the undersigned agrees with the PCR court's determination that Trial Counsel's performance regarding the victim's identification testimony was strong enough that Petitioner also did not sustain his "second prong" burden under *Strickland* of showing prejudice from Trial Counsel's assistance in this regard. *See* 466 U. S. at 694 (petitioner must show a reasonable probability that the outcome of his trial would be different but for counsel's ineffectiveness). Accordingly, Petitioner is not entitled to habeas relief on Ground One in his Petition, and Respondent's Motion for Summary Judgment on that ground should be granted.

                           b.        Ground Two: Ineffective Assistance of Counsel for Failure to Preserve Issue of Trial Court's Refusal to Allow Impeachment of the Victim with Pending Criminal Charges

In this Ground Petitioner contends that his Trial Counsel was ineffective for failing to join in his co-defendant's attempt to introduce evidence of a pending criminal charge of counterfeiting goods in Charleston County against the victim as impeachment evidence going to credibility and bias. Petitioner contends that the PCR decision otherwise was unreasonable because Trial Counsel testified that "it was a mistake for him failing to preserve that issue for appeal" and that his argument to the jury was "inadequate" and because prejudice was shown by

Petitioner's inability to raise this un-preserved point in his direct appeal. ECF No. 40 at 3-5. Respondent asserts that the PCR court reasonably discredited Trial Counsel's PCR testimony in light of other record evidence showing effective representation. Respondent also contends that the PCR court's decision properly applied established federal law because the trial court's exclusion of the proposed evidence did not present reversible error given the trial court's reasonable exercise of its broad discretion in such rulings, the lack of a proper proffer of the victim's testimony either in connection with the co-defendant's pretrial motion or at the PCR hearing, and record evidence showing that Trial Counsel was able to impeach the witness without use of the proposed extrinsic evidence. ECF No. 37 at 4-5.

The facts applicable to this Ground are that Petitioner's co-defendant's counsel made a pretrial motion to introduce a pending counterfeiting goods charge against the victim, arguing that "it goes to his credibility and bias . . . ." App. 153. The State objected to the introduction of such evidence, arguing that "it's not a conviction. I don't know what the basis would be." *Id*. Following additional argument from the co-defendant's counsel that the pending charge being prosecuted by the same county Solicitor's office that was prosecuting his client's criminal case were relevant to prove the "bias" of "an incentive to testify in a way the state wishes him to . . . ," the trial court denied the motion. App. 153-54. The trial court stated "I'm not going to allow you to go into opinion charge. Okay? Period." App. 154. Petitioner's trial counsel did not join in the co-defendant's motion, did not make any argument in favor of admitting evidence of the pending criminal charges, and did not interpose an objection to the trial court's ruling. App. 154. At the PCR evidentiary hearing, Trial Counsel testified that he was aware of the pending criminal charge and that he had intended to question the victim about it during his cross-examination had the evidence not been excluded by the trial judge's ruling on the co-defendant's pretrial motion. App. 644-45. Trial Counsel admitted that he did not preserve that issue for

appeal and stated that it was a "mistake" for him not to offer evidence of the pending charges at trial. App. 645. Trial Counsel also testified that he believed the trial court's ruling on the co-defendant's motion was incorrect, and that he believed that use of that evidence "would have resonated with the jury . . . ." App. 646-47. On cross examination, Trial Counsel admitted that he was able to impeach the victim's trial testimony by pointing to the disparity between his initial description of his assailant to police and the description he gave in his trial testimony, by using the victim's testimony from the *Neil v. Biggers* hearing, and by pointing out the length of time between the robbery and the actual identification of Petitioner to the police. App. 668-69. The PCR court found that Petitioner did not sustain his burden of showing that Trial Counsel was ineffective because counsel was able to thoroughly cross examine and impeach the victim's testimony without using evidence of the pending charges. App. 684.

The Sixth Amendment to the United States Constitution guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him. *See Davis v. Alaska*, 415 U.S. 308, 315 (1974). The Supreme Court has recognized a criminal defendant's constitutional right to cross-examine adverse witnesses as means of unearthing witness bias. *See Davis*, 415 U.S. at 316 (citing 3A J. Wigmore, *Evidence* § 940, at 775 (Chadbourn rev.1970)); *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973). Furthermore, the Supreme Court has held that forbidding any inquiry into a witness' bias is a constitutional violation. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679-80 (1986). However, the Supreme Court has not recognized the sweep of the Confrontation Clause to extend beyond guaranteeing the criminal defendant's rights to physically confront and cross-examine adverse witnesses to encompass the right to impeach an adverse witness by presented extrinsic evidence of the witness' prior bad acts. *See Harrington v. Jackson*, 1 F. App'x 367, 370, 372 (6th Cir. 2001) (exclusion of third-party testimony about witnesses' drug-related relationship offered to show "bias" was not contrary to "established

Supreme Court precedent" where counsel was able to effectively cross examine witness). Additionally, the Fourth Circuit has held that evidentiary rulings are generally considered state law matters. *Spencer v. Murray*, 5 F.3d 758, 763 (4th Cir. 1993) ("[A] claim about the admissibility of evidence under state law rarely is a claim upon which federal habeas corpus relief can be granted."). The same court has held that evidentiary rulings will not be considered in federal habeas "'unless [the] erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding.'" *Barbe v. McBride*, 521 F.3d 443, 452 (4th Cir. 2008) (quoting *Burket v. Angelone*, 208 F.3d 172, 186 (4th Cir. 2000)); *see also Harrington v. Richter*, 562 U.S. at 102-03 (quoting *Jackson v. Virginia*, 442 U.S. 307, 332 n.5 (1998)) ("Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."); *Grundler v. North Carolina*, 283 F.2d 798, 802 (4th Cir. 1960) (Federal habeas review of a state court's evidentiary rulings is limited to a consideration of whether any prejudice from the admission (or exclusion) of the evidence of the acts so outweighed its probative value as to give rise to "circumstances impugning fundamental fairness or infringing specific constitutional protections."); *Norris v. South Carolina*, 309 F. Supp. 1113, 1117 (D.S.C. 1970) ("Normally, the admissibility of evidence . . . in state trials are matters of state law and procedure not involving federal constitutional issues. It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented. The role of a federal habeas corpus petition is not to serve as an additional appeal.").

Under both South Carolina state and federal law, trial courts are vested with considerable discretion regarding requests to admit extrinsic evidence such as pending criminal charges or other "bad acts" for the purpose of impeaching a witness in a criminal case. *See* Fed. R. Evid.

608(b); S.C.R. Evid. 608 (b)[5]; *Alford v. United States*, 282 U.S. 687, 694 (1931) ("The extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court."); *State v. Quattlebaum*, 527 S.E.2d 105, 109 (S.C. 2000) (trial court's ruling on the proper scope of cross-examination is a matter of discretion); *see also State v. Kelsey*, 502

---

[5] The federal and state rules are substantially identical although the South Carolina rule contains an additional subsection relating to evidence of witness "bias" which is not contained in the federal rule. Federal Rule of Evidence 608(b) states:

> **(b) Specific Instances of Conduct.** Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court *may*, on cross-examination, *allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness* of:
>
> > **(1)** the witness; or
> >
> > **(2)** another witness whose character the witness being cross-examined has testified about.
>
> By testifying on another matter, a witness does not waive any privilege against self-incrimination for testimony that relates only to the witness's character for truthfulness.

South Carolina Rule of Evidence 608(b) and (c) states:

> (b) **Specific Instances of Conduct**. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They *may,* however, *in the discretion of the court, if probative of truthfulness or untruthfulness*, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
>
> The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of the accused's or the witness' privilege against self-incrimination when examined with respect to matters which relate only to credibility.
>
> (c) **Evidence of Bias**. Bias, prejudice or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced.

S.E.2d 63, 75 (S.C. 1998) (court's inquiry under Rule 608(b) is limited to those specific instances of misconduct which are clearly probative of truthfulness or untruthfulness). Additionally, the South Carolina Supreme Court has stated that, "[a]s a general rule, a trial court's ruling on the proper scope of cross-examination will not be disturbed absent a manifest abuse of discretion . . . subject  . . . to the Sixth Amendment's guarantee of a defendant's right to a 'meaningful' cross examination." *State v. Mitchell*, 498 S.E.2d 642, 645 (S.C. 1998). That same court has also stated the Sixth Amendment's Confrontation Clause

> does not . . . "prevent a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, witness' safety, or interrogation that is repetitive or only marginally relevant."

*State v. Smith*, 446 S.E.2d 411, 414 (S.C. 1994) (quoting *Delaware v. Van Arsdall*, 475 U.S. at 679-80); *see also Gamble v. Int'l Paper Realty Corp.*, 474 S.E.2d 438, 441 (S.C. 1996) (the decision to admit or exclude evidence is within the trial courts sound discretion and will not be disturbed on appeal absent an abuse of discretion); *State v. Schmidt*, 342 S.E.2d 401, 402-03 (S.C. Ct. App. 1986) (appellate court generally will not review alleged error of the exclusion of testimony unless a proffer of testimony is properly made on the record). In the specific realm of federal habeas corpus actions, this court has ruled that a petitioner's trial counsel was not ineffective for failing to impeach a witness with a pending criminal charge. *See Jones v. McCall*, No. 1:09-951-TLW-SVH, 2010 WL 3782104 (Aug. 4, 2010) (counsel not ineffective for failing to impeach witness with pending criminal charge), *report and recommendation adopted*, 2010 WL 3782069 (D.S.C. Sept. 21, 2010), *aff'd*, 441 F. App'x 159 (4th Cir. 2011). Also, at least one other federal court has held that a trial court's exclusion of proposed impeachment evidence relating to pending criminal charges against a witness did not provide a basis for habeas relief

where trial counsel was able to effectively cross examine and impeach the witness without use of the excluded evidence. *See Wesener v. Straub*, 110 F. App'x 614, 624 (6th Cir. 2004).

Having closely reviewed the parties' arguments and the record in its entirety, the undersigned finds that the PCR court's decision that Trial Counsel was not ineffective for failing to preserve the issue of the reliability of the victim's identification testimony at trial was reasonable and did not improperly apply established federal law. "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. at 105. The PCR court's determination that Trial Counsel was able to effectively impeach the victim's testimony without use of the pending-charge evidence is fully supported by the record. The PCR court was in the best position to determine the credibility of Trial Counsel's assertions of "mistake" and regret over his failure to join in the co-defendant's motion. The PCR court reasonably weighed Trial Counsel's PCR testimony against the other evidence in the record showing that he effectively impeached the victim's testimony using nearly all of the same facts that are now asserted to be indicia of unreliability and strenuously argued to the jury that the identification was not reliable. Also, considering the broad discretion given trial judges under applicable law to determine issues such as the admission or exclusion of extrinsic evidence for use in impeaching witnesses, the lack of a proffer of the victim's testimony about the pending charges, and the trial court's careful consideration of the issue disclosed by the record, Petitioner has not shown that the PCR court's decision was the result of an unreasonable application of established federal law. Legal counsel is not ineffective for failing to preserve an issue that does not present reversible error, and Petitioner has not made any showing that there is any reasonable probability that the outcome of

his case would have been different had Trial Counsel preserved this evidentiary issue for appellate review. *See State v. Schmidt*, 342 S.E.2d 401, 402-03 (1986) ("Ordinarily, this Court will not review alleged error of the exclusion of testimony unless a proffer of testimony is properly made on the record."); *see also Alford*, 282 U.S. at 694; *Quattlebaum*, 527 S.E.2d at 109. Accordingly, Petitioner is not entitled to habeas relief on Ground Two in his Petition, and Respondent's Motion for Summary Judgment on this Ground should be granted.

III.     Conclusion

The undersigned has considered Petitioner's Grounds for habeas corpus relief and recommends that the Petition be dismissed. Accordingly, for the foregoing reasons, it is recommended that Respondent's Motion for Summary Judgment, ECF No. 20, be GRANTED and that the Habeas Petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

July 1, 2015                                        Kaymani D. West
Florence, South Carolina                           United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).